Good afternoon, Your Honors. David Zuckerman, representing Samuel Rutherford. I would like to reserve two minutes for rebuttal, if I may. In this case, Your Honors, the transcript of the complaining witness at trial contained 430 portions that were completely untranslatable. And the remaining portions, in the words of the Washington State Court of Appeals, were often unnaturally awkward and incoherent. This inadequate transcript denied Mr. Rutherford a fair appeal. The problems came about in this case because the assigned court reporter, Ms. Streske, called in sick one day. The court brought in a substitute, a Mr. Trejo, even though it knew he had a history of problems. Mr. Trejo apparently had quite serious mental illness problems that prevented him from even attempting to transcribe his own notes later. Ms. Streske took a look at them and said they were completely incoherent. But the court eventually brought in a fellow named Mr. Flygear, who said that he could break the code. He did not claim to understand the keystrokes that Mr. Trejo had used. He did not claim that they correlated with any theory of shorthand he had ever seen before. But he claimed that somehow, over a long period of time, he was able to build up a database that would correlate these keystrokes with English words and phrases. I cannot – I've read through this, his testimony. I cannot figure out how he claimed to have done that. Because if you don't have a known to work from, if you have no known sample of testimony to work from, how do you ever know what – how to correlate the keystrokes to specific words? And that brings us to the first of Mr. Rutherford's claims, which is that the proceedings to settle the record were inadequate. I think the heart of that claim is that they can't be adequate unless the defense is given its own stenographic expert who can look over what Mr. Flagger is doing. No layperson has any way of verifying whether this database that Mr. Flagger has prepared is – makes any sense. We would need a stenographer to actually look at it and say, well, wait a minute. How did you – what is this – how did you determine that this was the keystroke he had typed?  The issue really – the utter accuracy of the transcript as compared to the words used or the substantive accuracy as compared to what happened, what the testimony was at trial. And in particular, I'm focused on the trial attorney who was present at trial, presumably knew what the witnesses said and would have had a basis from his notes or whatever else he used to determine whether or not the transcript was substantively accurate. Well, that's a good point, Your Honor. In fact, Mr. Frost, when he did show up two – keep in mind, two years later, when they finally had a hearing to settle the record, he certainly didn't have a photographic memory. But he came in and said, yeah, there's a lot that I know is wrong. The things he felt should be true. Well, what was wrong specifically that mattered? Well, the things he felt – I mean, there are a couple of places you say, well, I wouldn't have asked a question exactly that way. But what did he find in the transcript that was different from what happened in the trial? Well, the things he felt most sure about were things that were attributed to him. Yeah. So what? For example, you know, a particular question, a particular objection. But that's not evidence. Is there anything in the evidence that was not accurate? Well, Your Honor, he was unable to identify that. But again, two years had passed. And certainly, he probably wasn't taking notes while he was questioning witnesses. But he didn't write the trial judge's notes, correct? That's true, Your Honor. But I would encourage the Court to look at those in the excerpt of record and compare them to the transcript. I mean, we're talking about 13 pages of notes, mostly with one word per line on them, that are supposed to represent an entire day's transcript. And if you look at them, there are both significant omissions and significant inclusions that are wrong. For example, the judge's notes quote Ms. Midgett as, in quote – the only thing he put in quotes was, Mr. Rutherford said to Ms. Midgett, geez, chick, I wasn't going to hurt you. That does not appear anywhere in the supposed transcript. But that's the one thing the judge quoted. It's quite relevant to whether a deadly weapon was used in this case. Well, you know, it's kind of alarming when you say, as you have, you know, there's 435 places or however many. And I was concerned about that. So I went back and looked at all of those. And particularly Ms. Midgett, if that's how you say her name, that she was a key person in this situation. But where I came out, and maybe you can help me on this, is that I look and I see I counted at least four places where it was quite clear where the transcript basically said, you know, that she was hit on the head, which was a key question here. So where is the prejudice in terms of being able to have a fair review on appeal as it relates to the charges? Well, Your Honor, as the State had to prove as an element that Mr. Rutherford, first of all, that he used or attempted to use a deadly weapon. Now, a 9-inch plastic flashlight is not necessarily a deadly weapon. Well, you can make that argument as a legal matter. Nothing in the transcripts were going to speak to that. Well, but how do you make it? Because the whole part of the transcript where she's talking about the circumstances, how did he use it? What words did he use? Did he threaten her? It's all unreadable. The court of appeals, in saying that it could decide the issue, said, oh, well, we can conclude it's a deadly weapon because she was prone and subdued at the time he hit her over the head with this little flashlight, even though she says it wasn't a hard hit. Well, why does the court of appeals think she was prone and subdued? They're apparently basing that on one sentence in this transcript in which Ms. Midget is quoted as saying, he tackled me and then he hit me over the head, then he hit me in the head. Well, if there was the slightest error in that one sentence, if the sequence of events were slightly different, we don't have her prone and subdued anymore when he hits her in the head. Nothing in the judge's notes says she was. If her lawyer, who was there representing her, said, you know, he never said, she was prone and subdued, that's wrong. That's not an accurate statement. But the problem I have with it is that I can't find any place where the lawyer said, here is something that's wrong that affected the decision. I understand what you're saying, Your Honor. And again, we have one problem with time passing, another problem with that lawyer coming into court and saying, wait a minute, I haven't been appointed for purposes of this hearing. It's not clear that he made any real – put any real effort into tracking through the law. Well, here's an obligation to say that this transcript is – he didn't have to be the lawyer at that hearing to say the transcript is right or it's wrong or I don't know or whatever. I mean, if he represented her at the trial and the transcript is inaccurate and he's there to tell that to the court, and all he could say was, at the least, don't sound – some of them don't sound like the way I'd ask a question, which doesn't really matter much. What matters is, does the transcript inaccurately reflect what the evidence of the testimony was? And he doesn't say that it does. Well, and that may be a problem more with that lawyer than anything else. But I'd note that a lot of it is simply not even there. And that's, I think, what both he and the appellate lawyer were focusing on. There's so much that just isn't there at all that we can't tell at all what she's saying, particularly concerning the circumstances of any threats or any use of the deadly weapon. I take it what you really want is a hearing so there could be an independent construction or critique of the reconstruction. Is that correct? That's what I think needs to have happen. This needs to go back. We need an expert, a stenographic expert, to look over what Mr. Flaggator did and tell us, does this make sense? Or is he guessing? Or is he perhaps just assuming that things that were said pretrial, for example, were later said at trial? This whole notion that the testimony of the other witnesses was good may be a complete illusion. They happened to have testified at a pretrial hearing before another court reporter. The – I probably should save a bit of my time for rebuttal. You have 30 seconds. Very good, Your Honor. Thank you. Thank you, counsel. May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent Appellee. The district court correctly denied relief in this case because the state court adjudication was a reasonable application of clearly established Federal law. Petitioner's main argument during oral argument is that they had a right to have an expert to review this issue and to give an opinion regarding the accuracy of the transcribed notes. However, the state court adjudication was a reasonable application of Supreme Court case law. They rely on the Ackie case, Ackie v. Oklahoma, but the Supreme Court has expressly reserved that right to the appointment of psychiatric experts for purposes of the criminal trial. The Court has not extended it as far as non-psychiatric experts. And even though the lower – the circuit courts have extended it to other types of experts, the Supreme Court has not. Moreover, the Court has not extended it to post-trial proceedings such as reconstruction of a record on appeal. So therefore, their claim that they had a right to an expert in state court is not based on clearly established Federal law, and they are not entitled to relief. Counsel – There aren't reconstruction of transcript hearings very often because, fortunately, this is an unusual circumstance. Are you telling us that the only – that the Supreme Court would have to speak directly to the problem of reconstruction of a transcript for there to be clearly established Federal law as created – as established by the Supreme Court decisions? Would it have to be that specific in terms of the Supreme Court's decision? My opinion is yes, Your Honor. But even without going that far, the Supreme Court in Ackee and in subsequent cases in Caldwell v. Mississippi have stated that the rule in Ackee has been reserved to psychiatric issues. They have not extended it beyond that. And as the Supreme Court said in Mickens v. Taylor, which dealt with conflict of interest cases, and in Cain v. Especia, I believe is the correct pronunciation, which dealt with self-representation rights, if the Supreme Court has not addressed the issue in a holding of the court, it has not clearly established Federal law. The Supreme Court has not said in an appellate-type proceeding or a post-conviction proceeding, you have the right under Ackee or under due process to the appointment of an expert in state court. They have not reached that issue at all. So it's not merely an issue that they haven't reached this particular type of fact pattern. They have not reached the issue in the broader sense either. Counsel has argued that one of the issues they could have raised but were unable to do so due to the record was the use of a deadly weapon. In fact, they did raise that issue on direct appeal, and the state court rejected that. The state court at Excerpts of Record 759 held that the flashlight qualified as a deadly weapon for purposes of Washington law, and there was sufficient evidence. And there is also testimony or not testimony, but the record from the trial judge's notes at Excerpts of Record 607, where the trial judge had notes regarding the testimony of the victim regarding the fact that she was tackled, that she was hit on the head by a flashlight, the length of the flashlight, and the injury that was caused to her. So this is not a case where there was no record available for the court to review the petitioner's claim. There was a record. It was the reconstructed transcript along with the trial judge's notes, and that was sufficient to satisfy due process. The state court's decision in this case was a reasonable application of Supreme Court case law. They found that the disputed testimony or transcript was only from one day out of four days of testimony. It was corroborated by the trial judge's notes. It matched the pre-trial testimony of the police officers. And while there may have been disputes as to individual words that may have been said, there's been no real dispute as to the substance of the testimony presented at trial. And, therefore, the record was adequate. The state court decision was reasonable. And we would ask that this Court affirm the district court's judgment. Thank you, Your Honor. Thank you. Your Honors, I think perhaps I should just make clear that regardless of the claim regarding the adequacy of the reconstruction hearing, we still have an independent claim that the record we have here is not adequate for a fair appeal. And as to that claim, the Washington Court of Appeals' decision was clearly contrary to law, because the U.S. Supreme Court in Meyer said the burdens on the State to show that a less-than-complete record is adequate, the Washington Court of Appeals frankly placed the burden on the defendant to show prejudice, and that resulted in the circular kind of reasoning we got about how, well, you have – we don't see why we can't  All right. Thank you, Your Honors. Thank you, counsel. The case is submitted. Next.
judges: Reinhardt, McKeown, Clifton